UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE LEACH,

                Plaintiff,         Civil Action No. 13-14095
                                        Honorable Robert H. Cleland
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]**

      Plaintiff Theodore Leach ("Leach") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 13] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Leach is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [13] be GRANTED, Leach's Motion for Summary Judgment [11] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On May 6, 2011, Leach filed applications for DIB and SSI, alleging a disability onset date of May 13, 2004. (Tr. 109-21). These applications were denied initially on July 19, 2011. (Tr. 55-63). Leach filed a timely request for an administrative hearing, which was held on March 12, 2012, before ALJ Andrew Sloss. (Tr. 22-37). Leach, who was represented by attorney Daniel Pollard, testified at the hearing, as did vocational expert Mary Williams. (*Id.*). On June 28, 2012, the ALJ issued a written decision finding that Leach is not disabled. (Tr. 11-18). On July 23, 2013, the Appeals Council denied review. (Tr. 1-3). Leach filed for judicial review of the final decision on September 25, 2013. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

>regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **C.**     **Background**

        *1.*     *Plaintiff's Reports and Testimony*

At the time of the administrative hearing, Leach was 50 years old. (Tr. 25). He reported living in an apartment with family. (Tr. 139). He completed the eleventh grade, taking special education classes, but had no further education. (Tr. 26, 29). In the past, Leach worked as a hi-lo driver; however, he had not worked since he was fired from a job in 2003. (Tr. 26, 125-26). He testified that, since that time, he had been looking for work but had not been hired. (*Id.*).

Leach alleges that he suffers from right knee pain, hearing loss, dizziness, headaches, and ringing in his ears. (Tr. 26-27, 31, 125). He injured his knee in an accident at work and underwent physical therapy. (Tr. 27). He testified that he occasionally uses a cane, which was prescribed by his physical therapist. (Tr. 30). As a result of both his knee pain and his dizziness, he experiences falls at least once a day. (Tr. 31). In addition, Leach indicated that his hearing problem has worsened over the years. (Tr. 27). He has had several surgeries on his ears, most

recently on his right ear in September 2011, but that surgery "didn't actually do any good." (Tr. 27-28, 30). He indicated that he was supposed to wear hearing aids, but he lost them when he moved. (Tr. 146). Leach indicated that he was not taking any medication for his conditions. (Tr. 127, 146).

Leach reported having difficulty lifting, squatting, bending, standing, walking, kneeling, and stair climbing. (Tr. 144). When asked to describe his daily activities, however, Leach indicated that he is able to prepare meals, do the dishes, drive, shop for groceries, sweep the floor, and use the computer. (Tr. 26, 28, 141-42). He can stand for five or ten minutes at a time and can walk approximately ½ a block before his "knee starts to lock up." (Tr. 28-29). He is able to pay bills, count change, and handle a checking and savings account. (Tr. 142). His hobbies include riding snowmobiles and watching television, and he spends time with others on a regular basis. (Tr. 143). He follows written instructions "very well" and has no problems getting along with authority figures. (Tr. 144-45).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Leach's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *The ALJ's Findings*

Following the five-step sequential analysis, the ALJ found that Leach is not disabled under the Act. At Step One, the ALJ found that Leach has not engaged in substantial gainful activity since May 13, 2004, the alleged onset date. (Tr. 13). At Step Two, the ALJ found that Leach has the severe impairments of degenerative disease of the right knee and hearing loss. (*Id.*). At Step Three, the ALJ found that his impairments, whether considered alone or in

4

combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Leach's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations:  no climbing of ladders, ropes, or scaffolds; only occasional balancing, crouching, kneeling, or crawling; no work at heights; and no work in any job that requires fine hearing ability. (Tr. 13-17).

At Step Four, the ALJ determined that Leach is unable to perform his past relevant work. (Tr. 17).  At Step Five, the ALJ concluded, based in part on vocational expert ("VE") testimony, that Leach is capable of performing the jobs of inspector (5,000 jobs in the state of Michigan), janitor (5,700 jobs), and packer (9,200 jobs).  (Tr. 17-18).  As a result, the ALJ concluded that Leach is not disabled under the Act.  (Tr. 18).

### D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**E.     Analysis**

*1.     Waiver*

It is difficult to discern Leach's specific arguments in support of his motion for summary judgment. His motion consists almost entirely of a compilation of quotations of black letter case law, with little accompanying analysis or application of that law to the facts of his case. Leach

does assert (in a heading in his brief) that the ALJ erred in "assessing [his] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [his] impairments." (Doc. #11 at 6). But, Leach does not explain with any particularity whatsoever which medical records the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*).

In response to Leach's motion, the Commissioner argues that Leach has waived any challenge to the ALJ's assessment of the medical opinion evidence because he has not made any substantive claims of error regarding those aspects of the ALJ's decision.[1] (Doc. #13 at 7). Indeed, Leach's brief is very similar to one his counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Leach's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014)

---

[1] Leach provides the Court with nearly three pages of black letter law regarding the treating physician rule, but does not actually argue that the rule was violated here. (Doc. #11 at 12-14). His failure to even make – let alone fully develop – an argument regarding application of the treating physician rule constitutes a waiver of any argument he might otherwise have had on this issue. *See Terrell v. Comm'r of Soc. Sec.*, 2013 WL 5178541, at *9 (E.D. Mich. Sept. 10, 2013) ("[P]laintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim.").

7

(internal citations omitted).  While Leach's opening brief in the instant case was filed prior to issuance of the *Fielder* opinion, the Court notes that it is yet another "one-size-fits-all" brief, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*.  Here, then, the Court could find that Leach has waived his arguments regarding the ALJ's assessment of the medical opinion evidence.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).  Nonetheless, for the sake of completeness, the Court will endeavor to address all of the arguments alluded to – however briefly – by Leach.

        2.     *Credibility*

Leach challenges the ALJ's determination that he was not entirely credible.  He argues that the ALJ's determination was "clearly in error" because his testimony regarding his severe medical impairments is "backed up by medical documentation." (Doc. #11 at 11).  In making this assertion, Leach ignores the reasons articulated by the ALJ for discounting his credibility and fails to cite any medical evidence that the ALJ failed to properly consider.  As set forth below, the ALJ reasonably discounted Leach's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole.  (Tr. 30-32).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Here, the ALJ thoroughly discussed the objective medical evidence regarding Leach's impairments. (Tr. 14-17). As an initial matter, despite claiming disability since 2004, there is no documentation of medical treatment until June 2011, when Leach began treatment of his right knee. (Tr. 188).[2] At that time, he had joint pain and swelling, as well as decreased range of motion in both knees. (Tr. 188-89). July 2011 x-rays showed only mild degenerative arthritic changes to the left knee joint; no more than moderate degenerative arthritic changes to the right knee joint and patellofemoral joint with small joint effusion; and multiple small osseous densities about the right knee joint posteriorly suggestive of osteochondromatosis. (Tr. 228). It appears

---

[2] Indeed, one of the ALJ's first observations in his discussion of Leach's credibility was Leach's testimony that "he last worked in 2004, [and] stopped because he was 'fired', and has not been able to find a job since." (Tr. 14). Later in his decision the ALJ noted that during the July 2011 consultative examination, Leach reported that he stopped work, at least in part, due to "lack of work." (Tr. 15). By highlighting this evidence the ALJ was attacking any claim that Leach stopped working due to his alleged disability. Such a claim is also belied by Leach's testimony that: (1) he stopped working "because [he] got fired;" and (2) the reason he had not worked since was that he "ha[sn't] been able to get a job. I still try." (Tr. 26).

that Leach's last documented visit for knee pain was in July 2011.[3] (Tr. 184-85). He began physical therapy in August 2011; however, he attended only four sessions, cancelled one appointment, failed to show up for another appointment, and was ultimately discharged in September 2011 for his failure to return to the clinic. (Tr. 229). It was appropriate for the ALJ to cite this limited amount of treatment and missed appointments in making his credibility assessment. (Tr. 15). *See* S.S.R. 96–7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .");

Leach treated with Khaled Shukairy, M.D., from July 2011 to January 2012 for his hearing loss and complaints of dizziness, lightheadedness, blurred vision, and headaches. (Tr. 195-211). At a July 2011 visit, it was noted that he was suffering from "bilateral hearing loss with constant left ear tinnitus and occasional otorrhea." (Tr. 202). He was diagnosed with simple chronic serous otitis media (to the left ear) and tympanic membrane perforation (to the right ear), and was prescribed Ciprodex and Keflex. (Tr. 203). In September 2011, Leach underwent a right tympanoplasty, and later treatment notes reveal that he was recovering well, with a normal tympanic membrane and an otherwise normal ear examination. (Tr. 30, 195-96). In November 2011, an audiological evaluation showed that Leach had moderate hearing impairment of his right ear, and mild-to-moderate hearing impairment of his left ear. (Tr. 210). In January 2012, Leach reported that his vertigo was "getting gradually better," and he had experienced only one or two episodes since his surgery in September. (Tr. 208).

In July 2011, Leach underwent a consultative examination with Scott Lazzara, M.D. (Tr. 173-79). On examination, Leach had no evidence of joint laxity, crepitance, or effusion; had

---

[3] Although Leach visited his primary care physician several times after July 2011, he was treated for conditions other than knee pain, including prostatitis, diabetes mellitus, and smoking cessation. (Tr. 212-21).

10

moderate synovial thickening of his right knee, with lesser synovial thickening of his left knee; had mild difficulty getting on and off the examination table; had mild difficulty heel and toe walking and moderate difficulty squatting; and had a negative straight leg raising test. (Tr. 174). Dr. Lazzara noted that Leach walked with a mild right-sided limp and indicated that an "assistive device would be helpful on uneven ground due to his knee buckling," which he suspected was due to "progressive deterioration of the meniscus." (Tr. 177). With respect to Leach's hearing loss, Dr. Lazzara noted that he was able to hear normal volume at a distance of six feet without hearing aids, and there were no vertiginous abnormalities. (*Id.*). He further indicated that replacement hearing aids would be helpful. (*Id.*). Dr. Lazzara opined that although Leach's condition would decline, his overall degree of impairment was mild. (*Id.*). Thus, in discounting Leach's credibility, the ALJ appropriately noted that "[a]t the time of the July 2011 examination, he was not undergoing any treatment for his hearing loss," and that Leach "was able to hear normal volume at six feet without hearing aids." (Tr. 15; *cf.* Tr. 14 (noting that, at the hearing, Leach "appeared to be exaggerating his hearing loss and required the [ALJ] to shout questions to [him] at eight feet away.")).

In light of the foregoing evidence, the ALJ's RFC finding adequately accommodated Leach's knee pain and hearing loss. (Tr. 13-14). The ALJ concluded that Leach could perform light work, but with no climbing of ladders, ropes, or scaffolds; only occasional balancing, crouching, kneeling, or crawling; no work at heights; and no work in any job that requires fine hearing ability. (Tr. 13-17). Leach has offered no evidence justifying greater limitations than those the ALJ identified resulting from his knee pain and/or hearing loss.

In addition, the ALJ noted that Leach's allegations of disabling limitations were not consistent with his reported daily activities. (Tr. 14-16). For example, the ALJ noted that Leach

11

was able to prepare simple meals (mainly sandwiches), perform housework such as washing dishes and sweeping the floors, shop for groceries, and ride in a car twice a week. (Tr. 16, 28, 141-42, 173). He did not use an assistive device to ambulate and reported that he lost his hearing aids while moving. (Tr. 16, 145-46). The ALJ also noted that Leach rode snowmobiles, spent time with his children, and enjoyed fishing. (Tr. 15, 16; 143, 173).[4] It was appropriate for the ALJ to consider these facts in assessing Leach's credibility. *See* 20 C.F.R. §416.929(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *see also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain). Finally, Leach said he could lift 25 pounds, had no problems sitting as long as he kept his legs elevated,[5] and could stand for 25 minutes at a time, all matters appropriately considered by the ALJ. (Tr. 15, 173). Thus, Leach's own reported activities undermine his claim of disabling limitations.

In the face of all of this substantial evidence, Leach relies primarily on own his testimony and his subjective complaints to physicians. (Doc. #11 at 10-11). However, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). In sum, while Leach might disagree with the ALJ's credibility assessment, he has failed to articulate a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538;

---

[4] Although Leach indicated that he does not go snowmobiling very often, at least as of July 7, 2011, he reported that he "still enjoyed fishing." (Tr. 143; 173). And, the fact that Leach could, even on an infrequent basis, engage in snowmobiling, is inconsistent with the level of limitations he claimed to be suffering from. Taken together, the foregoing constitutes part of the substantial evidence in support of the ALJ's credibility determination.

[5] Leach did not indicate any problems sitting on his disability report. (Tr. 143-44).

*Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason").  Here, where the ALJ gave a reasonable explanation for discounting Leach's credibility, and that explanation is supported by substantial evidence, his credibility finding should not be disturbed.

### 3. Reliance on VE Testimony[6]

Leach also argues that the ALJ erred in two respects in relying on the testimony provided by the VE.  First, while Leach acknowledges the VE's testimony that he could perform the requirements of representative occupations such as inspector, janitor, and packer (Doc. #11 at 11 (citing Tr. 28, 35)), he asserts that it is "impossible to determine if these jobs are within [his] RFC" because "there is no mention of DOT [Dictionary of Occupational Titles] codes," either in the VE's testimony or in the ALJ's decision.  (*Id.* at 11-12).  The Court finds no merit to this argument.

As an initial matter, Leach has not cited any cases in support of his argument that remand is required simply to ascertain DOT job codes, and the Court is aware of none.  Indeed, courts have declined to remand in other cases where DOT codes were not provided.  *See, e.g., Kelly v. Comm'r of Soc. Sec.*, 2008 WL 2950106, at *7 (E.D. Mich. July 31, 2008); *Wilson v. Comm'r of*

---

[6] At one point in his brief, Leach asserts that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." (Doc. #11 at 10 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Then, however, Leach simply states in conclusory fashion that "[b]ecause each element of the [ALJ's] hypothetical does not accurately describe [him] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*Id.*).  Because the ALJ thoroughly reviewed and discussed the record evidence in formulating Leach's RFC, and in doing so expressly considered the objective medical evidence, the opinion of the consulting examiner, and Leach's daily activities, the ALJ was not required to include any additional limitations urged by Leach in the hypothetical question he posed to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible).  As such, to the extent Leach argues that the ALJ formed an inaccurate hypothetical, such an argument fails.

*Soc. Sec.*, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011) ("Even with the inconsistencies and the failure to provide the DOT codes, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT."). Here, where the ALJ specifically asked the VE if her testimony comported with the DOT, and the VE responded in the affirmative (Tr. 36), that is all that is required. *See Soc. Sec. Rul. 00-4p*, 2000 WL 1898704, at *2-3 (Dec. 4, 2000). The ALJ is under no independent obligation to verify the accuracy of the VE's testimony. *See Baker v. Comm'r of Soc. Sec.*, 2012 WL 2309063, at *4 (E.D. Mich. June 18, 2012). As the Sixth Circuit stated in *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163 (6th Cir. 2009), "[t]his obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief." *Id.* at 168-69. Here, where Leach's attorney had the opportunity to ask the VE for the specific DOT codes, and either failed or chose not to do so (Tr. 36), the Court finds no error warranting remand.

Lastly, Leach argues that remand is required because the ALJ did not properly consider "the effect of having to use a cane, which is prescribed by his doctor, on these jobs that the VE found." (Doc. #11 at 12). At the administrative hearing, Leach's attorney asked the VE how the use of a cane would affect the hypothetical individual's ability to perform the jobs of packer, inspector, and janitor. (Tr. 36). In response, the VE testified:

> These are light jobs that are done – performed standing, and so, if an individual is using a cane for standing and walking, that would reduce them to one-handed work, and they wouldn't be able to perform them, although I could reduce the inspector jobs, if the individual only needed the cane for walking, and they could stand and still have use of both hands. I would reduce the numbers, in that case.

(*Id.*). According to Leach, remand is required "for clarification as to the effect of the cane on these jobs and how often and what the claimant uses the cane specifically for." (Doc. #11 at 12).

14

The Court disagrees.  Although Leach asserts in his motion that he "[has] to use a cane, which is prescribed by his doctor" (*Id.*), neither of these facts is borne out by the record.  There is no evidence that a physician prescribed a cane for Leach; indeed, he claimed that his *physical therapist* prescribed the cane.[7]  (Tr. 28).  Importantly, Leach indicated – both in a Function Report and at his consultative examination – *that he does not use a cane*.  (Tr. 145, 173).  Even giving Leach the benefit of the doubt, and accepting as true his hearing testimony – which starkly contradicts his prior statements – he uses his cane only when he goes grocery shopping (i.e., walking, not standing).  (Tr. 28).  In summary, there is *no* evidence in the record that Leach uses a cane simply for standing.  As such, his argument that the ALJ erred in relying on the VE's testimony fails.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Leach's Motion for Summary Judgment **[11]** be **DENIED**, the Commissioner's Motion **[13]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: August 21, 2014            s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                  United States Magistrate Judge

### REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for

---

[7] Interestingly, however, in the medical records from Michigan Extremity Care, where Leach underwent physical therapy, there is no indication that a cane was even *recommended*, let alone prescribed.  (Tr. 229-39).

15

in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 21, 2014.

        s/Eddrey O. Butts
        EDDREY O. BUTTS
        Case Manager